

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| HOWARD WORTHING AND | | No. 08-16-00009-CV |
| LISA WORTHING, | § | |
| | | Appeal from |
| Appellants, | § | |
| | | 33rd District Court |
| v. | § | |
| | | of Burnet County, Texas |
| DEUTSCHE BANK NATIONAL | § | |
| TRUST COMPANY, AS TRUSTEE | | (TC # 40677A) |
| FOR AGENT SECURITIES INC., | § | |
| ASSET-BACKED PASS THROUGH | | |
| CERTIFICATES, SERIES 2003-W5, | § | |
| AND HOMEWARD RESIDENTIAL, | | |
| INC. F/K/A AMERICAN HOME | § | |
| MORTGAGE SERVICING, INC., | | |
| | § | |
| Appellees. | | |
| | § | |

**O P I N I O N**

In this appeal, we review a summary judgment in favor of a lender and a loan servicing company following the foreclosure on Howard and Lisa Worthings' homestead. Like many cases of this type, the homeowners seek to stave off eviction and retain their home while the lender seeks to enforce a mortgage contract in the face of default and delinquency. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Howard and Lisa Worthing allege that they refinanced the purchase of their homestead in Marble Falls, Texas, through Argent Mortgage Company, LLC (Argent) on August 12, 2003.[1] Howard executed a Texas Home Equity Note for $652,500 (the Note) and a Texas Home Security Instrument (Deed of Trust) in favor of Argent. Argent indorsed the Note to Amerquest Mortgage Company. In turn, Amerquest later indorsed the Note in blank. Appellee Deutsche Bank National Trust Company, as Trustee for Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2003-W5 (Deutsche Bank) was in possession of the Note at the time of the summary judgment.

The Note had a string of different loan service companies. Amerquest, which later changed its name to AMC Mortgage Services, Inc., originally serviced the Note. Two years later AMC assigned the loan servicing functions to Citi Residential Lending, Inc. Effective February 11, 2009, Citi Residential assigned the loan serving to Appellee Homeward Residential Inc., f/k/a American Home Servicing, Inc. (Homeward). As a part of that change, Citi Residential as the "Attorney in Fact for Argent," conveyed, granted, sold, assigned, and transferred the Deed of Trust and Note to Deutsche Bank. The transfer document was executed by Crystal Moore, whose signature was notarized by Bryan Bly. As we note below, both of these persons are important to the Worthings' forgery contentions.

On August 18, 2009, Homeward provided notice of default and notice of intent to accelerate the Note after the Worthings had stopped making payments. Thereafter, Deutsche Bank filed a proceeding under TEX.R.CIV.P. 736 to judicially authorize the foreclosure. A trial court granted it permission to do so on March 9, 2010. More than two years later, Deutsche

---

[1] This appeal was transferred to this court from the Third Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of that court to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

Bank appointed a substitute trustee under the Deed of Trust and on July 3, 2012, the substitute trustee sold the property at a foreclosure sale.

The Worthings, who were still living at the house, sued Deutsche Bank, Homeward, and others. The factual recitations in the lawsuit claimed that Argent did not qualify as one of the designated type of lenders allowed to make a home equity loan in Texas. Consequently, the Worthings assert that Argent automatically forfeited all principal and interest under the Note, and the ensuing foreclosure was invalid. As we explain in more detail below, the Worthings pled additional technical problems with the paperwork in the chain of title, including that the assignment is "fake" having been executed by "robo-signers."

From the factual allegations, the Worthings allege causes of action for (1) wrongful foreclosure (2) quiet title (3) breach of contract (4) statutory violations of Chapter 51 of the Texas Property Code (5) violation of Chapter 392 of the Texas Finance Code (6) violation of the Texas Deceptive Trade Practices Act and (7) violation of Chapter 12 of the Texas Civil Practice and Remedies Code. Deutsche Bank and Homeward answered and filed a traditional and no-evidence motion for summary judgment. The traditional motion addressed Argent's status as a lender and laid out the chain of title documents for the Note and Deed of Trust. In its no-evidence motion, Deutsche Bank set out the pled causes of action and claimed the Worthings lacked evidence on one or more elements of each. The motion further recited that as of December 2, 2014, the Worthings were still living at the property and had made no payment since July 2009. The Worthings responded to the affirmative summary judgment claims, and

responded to some, but not all of the challenged causes of action under the no-evidence portion of the motion. The trial court granted the motion and this appeal follows.[2]

The Worthings present three issues with subparts, and we discern there are four remaining disputes between the parties: (1) whether the original lender, Argent, was authorized to make the Worthings' home equity loans; (2) whether the 2009 assignment of the Deed of Trust and loan to Deutsche Bank forged; (3) whether claimed discrepancies in the chain of title create a fact issue; and (4) whether the existence of a non-conforming copy of the Note creates a fact issue as to who now owns the note. Answering these questions resolves the ultimate issue of whether the trial court erred in granting summary judgment as to each of the Worthings' claims.

## STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Deutsche Bank filed a hybrid motion including both traditional and no-evidence grounds. Rule 166a(i) permits a party to move for a no-evidence summary judgment "without presenting summary judgment evidence," but requires the moving party to "state the elements as to which there is no evidence." TEX.R.CIV.P. 166a(i); *Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2013, no pet.); *Aguilar v. Morales*, 162 S.W.3d 825, 834 (Tex.App.--El Paso 2005, pet. denied). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. *Wade Oil & Gas*, 417 S.W.3d at 540. The trial court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact. TEX.R.CIV.P. 166a(i).

---

[2] The Worthings made various objections to Deutsche Bank's evidence that were overruled; no issue is raised on appeal attacking the evidentiary rulings. The summary judgment also addressed a claim that this loan was invalid under New York trust law. That issue also has not been brought forward on appeal.

4

A no-evidence motion for summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard of review as we would for a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Under this standard, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The non-movant raises a genuine issue of material fact by producing more than a scintilla of evidence regarding the challenged element. *King Ranch*, 118 S.W.3d at 751. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Id.* at 751. There is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540. Evidence that fails to constitute more than a mere scintilla is, in legal effect, no evidence at all. *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001); *Wade Oil & Gas*, 417 S.W.3d at 540.

Deutsche Bank also asserted a traditional summary judgment under TEX.R.CIV.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). Evidence favorable to the non-movant is taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. Once

5

the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence that raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

The common thread to each of the Worthings' causes of action is that the chain of title from Argent to Deutsche Bank was for various reasons broken, and thus it had no right to foreclose on the property. We take each of the challenges in turn.

### COULD ARGENT REMEDY ITS STATUS AS AN UNLICENSED LENDER?

The Worthings claim that because Argent was an unlicensed lender at the time the loan was made, the loan was void at its inception and Argent (and any subsequent holder or assignee of the Note) could not foreclose on the property. Because this was a home equity loan involving homestead property, the loan must have conformed to the requirements for such loans as set out in the Texas Constitution. *See* TEX.CONST. art. XVI, § 50. Section 50(c) provides that no mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt "described by this section." TEX.CONST. art. XVI, § 50(c). One of the constitution's requirements is that only certain entities can make home equity loans. *Id.* at § 50(a)(6)(P). Argent was apparently not such an entity at the time of the loan because it lacked a proper license.

However, when the loan was made, the constitution gave leeway to cure defects. Article XVI, § 50(a)(6)(Q)(x) at the time read:

> [T]he lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit *within a reasonable time* after the lender or holder is notified by the borrower of the lender's failure to comply[.] [emphasis added]

6

TEX.CONST. art. XVI, § 50(a)(6)(Q)(x)(amended 2003). This language was substantially changed through the 2003 amendment to Section 50 that replaced the "reasonable time" language with a sixty-day deadline, and defined specific cures for specific defects. TEX.CONST. art XVI § 50(a)(6)(Q)(x)(a)-(f). But the amendment removed entirely the cure language for an unlicensed lender:

> [T]he lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision . . . .

*Id*. at § 50(a)(6)(Q)(xi). The amendments became effective on September 13, 2003. *See* Act of May 24, 2003, 78th Leg., R.S., S.J.R. 42, 2003 TEX.GEN.LAWS 6219, 6225 (setting forth date for election). In this case, Argent remedied the licensure issue on December 17, 2003 when it obtained an appropriate license as a Texas Mortgage Banker. Thus it cured the problem well before the Worthings ever made complaint, but only after the adoption of the 2003 amendment to the Texas Constitution.

The pre-amendment version of Section 50(a)(6)(Q)(x) was construed in *Doody v. Ameriquest Mort. Co*., 49 S.W.3d 342 (Tex. 2001). That decision convinces us that under the law in effect at the time the loan's execution, Argent validly remedied the absence of the license. In *Doody*, the lender charged excessive closing costs. *Id*. at 343. It discovered the overcharge on its own, and refunded the amount to the borrower, thus curing the overcharge. Nonetheless, the borrower sued claiming both that the lien on his residence was invalid, and that the lender should forfeit all principal and interest. Before the supreme court, the borrower claimed the remedy option in Section 50(a)(6)(Q)(x) only applies to a forfeiture of principal and interest, and not to remedy the defect in the lien. The court rejected that claim and any narrow construction of Section 50(a)(6)(Q)(x). Instead, the court held that the cure option applied to all the lender's

7

obligations under the extension of credit. *Id.* at 345. Because licensure of those who can make an extension of credit is one of the obligations, the prior version of the constitution would permit a cure of Argent's lack of licensure. *See also Boutari v. JPMorgan Chase Bank, N.A.*, 2010 WL 9453407 at *5 (W.D. Tex. June 10, 2010), *aff'd,* 429 F.App'x 407 (5th Cir. 2011)(holding lender could cure licensure deficiency under prior version of constitution).

That brings us to the primary bone of the parties' contention: Does the 2003 amendment, which eliminates the cure option, apply retroactively? We conclude that it does not. This same issue was directly addressed in *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 155 (Tex.App.--Fort Worth 2007, pet. denied). The court there held the portions of the 2003 amendments that replaced the "reasonable time" cure period with a specific sixty-day period did not apply retroactively. The court's analysis began with the general rule that constitutional amendments and statutes operate prospectively unless they expressly provide otherwise. *Id.* at 155, *citing Benchmark Bank v. Crowder*, 919 S.W.2d 657, 660 (Tex. 1996)(noting intervening amendment to homestead provision has no bearing on our disposition of this case because the [lender's rights] "rights were fixed before the amendment's adoption") and *Deacon v. City of Euless,* 405 S.W.2d 59, 61 (Tex. 1966)(changes may operate retroactively when it is apparent that the adopters intended retroactive application of the amendment, provided that retroactive application does not impair vested rights). Absent clear intent, retroactive application is disfavored and should occur "only where the public policy is so clearly and broadly stated as to be unmistakable." *Beck v. Beck*, 814 S.W.2d 745, 750 (Tex. 1991) (Cook, J., concurring).

The *Fix* court found no expressed intent or public policy basis for retroactively applying the 2003 amendment. As to public policy, the court noted the presumption that parties to a contract know and take into consideration the law in effect at the time of contract. *Id*. at 155,

8

*quoting Jamestown Partners, L.P. v. City of Fort Worth,* 83 S.W.3d 376 (Tex.App.--Fort Worth 2002, pet. denied). Accordingly, courts should be reluctant to change the rights and obligations of parties by retroactively applying a change in the original law. Moreover, nothing in the text of the 2003 amendment indicates that the makers and adopters intended retroactive application. The legislative history of the constitutional amendment indicates that the makers meant it as nothing more than a "clarif [ication of] the cure process", thus belying any public policy purpose that would necessitate retroactive application. *Id*. at 156, *quoting* House Comm. Report on Financial Institutions, Comm. Report, Tex. S.J.R. 42, 78th Leg., R.S. (2003). As the Worthings offer no compelling reason to hold to the contrary, we adopt *Fix*'s reasoning and hold the 2003 amendment does not apply retroactively here. We therefore reject the claim that Argent was an unauthorized lender for the Worthings home equity loan.[3]

### DID APPELLANT'S RAISE A FACT ISSUE ON FORGERY?

The Worthings also argue that the assignment of the Note and Deed of Trust from Argent to Deutsche Bank was forged, making the assignment void and divesting Deutsch Bank of any rights to foreclose on the property. *See Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 947 (Tex.App.--Houston [1st Dist.] 1993, no writ)("A forged deed is void ab initio.").

Effective February 11, 2009, Citi Residential as attorney in fact for Argent, assigned the Deed of Trust together with the "certain note(s) described therein" to Deutsche Bank. The forgery claim centers on the assignment document containing the signature of Crystal Moore as

---

[3] As a subpart to that issue, the Worthings also challenged the portion of the summary judgment that argued that the four-year statute of limitations would also bar any claim based on the absence of the Argent's license. While this case was on appeal, the Texas Supreme Court's decided *Wood v. HSBC Bank USA, N.A*., 505 S.W.3d 542, 545 (Tex. 2016) that holds "liens securing constitutionally noncompliant home-equity loans are invalid until cured and thus not subject to any statute of limitations." We need not decide the statute of limitations question in light of our holding on retroactive application of the 2003 amendment.

"Vice President" and Bryan Bly, as notary. Apparently, both of these individuals have received some notoriety as so called "robo-signers" of loan documents. *See e.g. Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 227 (5th Cir. 2013)(questioned signature of Bryan Bly as Vice President of Citi Residential Lending); *Vazquez v. Deutsche Bank Nat. Trust Co., N.A.*, 441 S.W.3d 783, 785 (Tex.App.--Houston [1st Dist.] 2014, no pet.)(claim that Bryan Bly did not authorize his signature as Vice President of Citi Residential Lending); *In re Carrsow-Franklin*, 456 B.R. 753, 757 (Bankr. D.S.C. 2011)(noting Reuters Magazine article discussing Bly); *Forrest v. Citi Residential Lending, Inc.*, 73 So.3d 269, 273 (Fla. 2d Dist. App. 2011)(appeal of injunction ruling prohibiting posting of Crystal Moore and Bryan Bly's deposition).

The Worthings' petition claims that the assignment is "fake" or "fraudulent" because Crystal Moore is not a Vice President of Citi Residential Lending, or her signature and the notary's signature are a "forgery." The gravamen of the complaint is actually that Moore and Bly sign documents they do not read, or others electronically make their signature. We reject the claim for several reasons.

First, the Worthings' response to the no evidence motion for summary judgment never showed that Moore was not a designated Vice President for Citi Residential. Even at that, "[t]he rule is also clear that one who signs [their] true name, purporting to act as the agent of another, has not committed a forgery." *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976). At most, a misrepresentation of a signer's position might render the contract voidable at the election of the defrauded principal, but not void. *Id.* As such, the Worthings would lack standing to complain of a merely voidable defect. *Reinagel*, 735 F.3d at 226 ("Bly's alleged lack of authority, even accepted as true, does not furnish the Reinagels with a basis to challenge the second assignment.").

10

A true forged signature, however, would make the transaction void, which might give the Worthings standing. *Vazquez*, 441 S.W.3d at 787; *Reinagel*, 735 F.3d at 224-25. The Worthings, however, carried the burden of presenting some evidence of the forgery in response to the no-evidence motion for summary judgment. They attempted to meet this burden by attaching the transcript of a congressional hearing and an internet news article to their response. As for the congressional hearing transcript, it only contained as an exhibit a reprint of an Associated Press story. That story includes a claim that several hundred documents filed in a North Carolina county had "suspect signature[s]", some of which were from Bryan Bly and Crystal Moore. The two had supposedly admitted to "signing their names to mortgage documents without having read them." The other evidence the Worthings rely on was a web based news article reporting on a deposition taken of Bly and Moore in an unnamed lawsuit. The gist of the article is that each admitted to signing documents without reading them, and some signatures were "e-signed" in counties that permit that practice.

Deutsche Bank objected to the articles on authentication and hearsay grounds, but never obtained a ruling from the trial court. Nonetheless, even accepting the articles as valid summary judgment evidence, they fail to show why the document is a forgery. Under the Texas Penal Code, the term "forge," means: "(A) to alter, make, complete, execute, or authenticate any writing so that it purports: (i) to be the act of another who did not authorize that act; (ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or (iii) to be a copy of an original when no such original existed . . . [.]" TEX.PENAL CODE ANN. § 32.21(a)(1)(A)(West 2016); *In re Estate of Flores*, 76 S.W.3d 624, 630 (Tex.App.--Corpus Christi 2002, no pet.)(applying definition in civil proceeding). The mere fact that Moore or Bly sign many documents a day does not meet this definition. The Worthings presented no evidence

11

that these particular signatures were "e-signed", or if so, that Moore did not authorize the e-signing of her signature. Nor did they link any of the "robo-signing" allegations in the two articles to the companies in this case.

The Worthings place great emphasis on *Vazquez v. Deutsche Bank Nat. Trust Co., N.A.*, 441 S.W.3d 783 (Tex.App.--Houston [1st Dist.] 2014, no pet.) where the court reversed a summary judgment based on the debtor's forgery allegation regarding a document signed by Bryan Bly as Vice President of Citi Residential Lending. The summary judgment filed in *Vazquez* was a traditional Rule 166a(c) motion where Deutsche Bank carried the burden to disprove the forgery allegation. *Id.* at 785. Here, the no evidence portion of the hybrid motion shifted the burden to the Worthings and they simply failed to meet their burden. In *Vazquez*, the plaintiffs had also alleged "Bly's electronic signature was affixed to the assignment by someone else without his knowledge or approval." *Id*. at 785. That is a far cry from merely complaining he did not read the document before signing it.[4] We therefore reject the Worthings claim that the assignment was forged and thus void, or that if fraudulent and voidable, that they have standing to raise that claim.

## CLAIMED DISCREPANCIES IN THE ASSIGNMENT AND CHAIN OF TITLE DOCUMENTS

Deutsche Bank claims its right to foreclose through actual possession of the Note (indorsed in blank by the previous holder) and through the assignment of the Deed of Trust and Note. It supported its traditional summary judgment with an affidavit laying out the chain of title, and included the assignment for the Deed of Trust and Note. In their response, the

---

[4] We note the authorizing signature here was of Crystal Moore, and that Bryan Bly only notarized the instrument. The court in *Reinagel v. Deutsche Bank Nat'l Trust Co.* held Texas law does not require an assignment to be notarized, and thus a defective acknowledgment has no bearing on the rights between the mortgagor and mortgagee. 735 F.3d 220, 227-28 (5th Cir. 2013). We need not reach that issue because the Worthings have failed to present evidence that either signature was forged.

Worthings attached an "Assignment of Lien" form, which purports to assign the Note and liens to Deutsche Bank *from* Deutsche Bank "by Citi Residential Lending, Inc. as Attorney-in-Fact." The Worthings claim this "Assignment of Lien" is in error because it states that the Note was executed by "Howard Worthing and wife, Lisa Worthing," when the actual note was only executed by Howard Worthing. They further claim that the chain of title for the Deed of Trust and the Note take different and inconsistent paths. Their brief fails to explain the significance of the "Assignment of Lien" and Deutsche Bank never relied on that document to prove its chain of title.

Additionally, an implicit assumption in the argument is that Note and Deed of Trust must travel together, when the weight of authority is to the contrary. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013)(noting two cases supporting the "split the note" view, but then stating "[t]he weight of Texas authority, however, suggests just the opposite."); *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3-4 (Tex.App.--Austin Aug. 30, 2012, pet. denied)(mem.op.)("[A] lien creditor may pursue foreclosure of a lien against real property under the deed of trust independent of any personal action against the borrower for collection on the note."). The Worthings never respond to this argument, and we fail to see how the claimed discrepancy in the "Assignment of Lien" or the differing routes that the Note and Deed of Trust took create a genuine issue of material fact as to any contested issue in this case.

**DOES THE EXISTENCE OF A NON-CONFORMING COPY OF THE NOTE CREATE A FACT ISSUE?**

Deutsche Bank purportedly produced at some point in the discovery process a copy of the Note that did not have any indorsements. The Worthings claim this non-conforming copy creates a fact issue about whether Deutsche Bank actually holds the true note.

13

The mere existence of a non-conforming copy of a note does not raise a genuine issue of material fact with regard to the authenticity of the note, or here the fact that the original note was indorsed. In *Chance v. CitiMortgage, Inc.*, 395 S.W.3d 311, 314-15 (Tex.App.--Dallas 2013, pet. denied) the court considered a summary judgment record where one copy of a note contained a stamp and another copy did not. The court concluded this difference failed to raise a genuine fact issue as the note's authenticity. *Id.* When a note goes from one holder or mortgage servicing company to another (here over a ten-year period), it would in fact be surprising not to find non-conforming copies littered in various files. The non-conforming copy infers little more than someone copied the Note before it was indorsed. *See Wilner v. Deutsche Bank Nat. Trust Co.*, 02-11-00287-CV, 2012 WL 6632508, at *4 (Tex.App.--Fort Worth Dec. 21, 2012, no pet.)(mem.op.)(non-movant who pointed to copies of note filed of record before a certain date and which did not contain indorsement, at most proved that the indorsement was made at some later date). Nor does the Worthings' claim create a genuine issue of material fact challenging Deutsche Bank's affidavit, which details its possession of the original note. *Chance*, 395 S.W.3d at 315 (noting non-conforming copy created no more than "mere speculation or conjecture" and did not overcome affidavit of record custodian who held original note).

The argument fails for another reason. The Worthings attached the non-conforming copy of the Note as a naked exhibit to their summary judgment response -- there was no affidavit linking the copy to Deutsche Bank's discovery responses, nor were the discovery responses included. There is no summary-judgment evidence to substantiate their claim that the non-conforming copy came from Deutsche Bank, or if so, the context of the discovery response. *See Judah v. EMC Mortg. Corp.*, 03-14-00304-CV, 2015 WL 5096798, at *4 (Tex.App.--Austin

14

Aug. 25, 2015, pet. denied)(mem.op)(rejecting similar claim of non-conforming copy for the same reason).

## APPLICATION TO PLED CAUSES OF ACTION

Resolution of the four issues above dictate the outcome of the summary judgment for each of the Worthings' causes of action. A successful plaintiff in a quiet title action must show the invalidity of the defendant's claim to the property. *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex.App.--El Paso 2012, pet. denied); *Essex Crane Rental Corporation v. Carter*, 371 S.W.3d 366, 387-88 (Tex.App.--Houston [1st Dist.] 2012, pet. denied); *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex.App.--San Antonio 2009, pet. denied). The Worthings attempted to do so through the challenge to Argent's status as a proper lender, and the various challenges to Deutsche Banks' chain of title. Because we overrule those contentions, we agree that summary judgment was proper as to the quiet title action.

For the same reason, we affirm the summary judgment on the wrongful foreclosure claim, which has as one of its elements proof of a defect in the foreclosure sale proceeding. *See Collins v. Bayview Loan Servicing, LLC*, 416 S.W.3d 682, 687 n.7 (Tex.App.--Houston [14th Dist.] 2013, no pet); *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 139 (Tex.App.--Corpus Christi 2008, no pet.). The Worthings put on no proof of irregularities in the foreclosure sale itself, other than chain of title arguments that we have already rejected. The trial court properly granted summary judgment on the wrongful foreclosure cause of action.

The Worthings' Texas Property Code claim under Chapter 51 is likewise based on the claimed improper assignment of the Note and Deed of Trust, which in turn implicates Deutsche Banks' appointment of a substitute trustee, acceleration of the note, and other prerequisites required by TEX.PROP.CODE ANN. § 51.002 (West 2014). We likewise affirm the summary

15

judgment as to this cause of action. The Worthings' fraudulent lien claim under TEX.CIV.PRAC.&REM.CODE ANN. § 12.002(a)(West 2017) required them to show: (1) the defendant made, presented, or used a document with knowledge that it was a fraudulent lien, (2) the defendant intended that the document be given legal effect, and (3) the defendant intended to cause plaintiff physical injury, financial injury, or mental anguish. *Merritt v. Davis*, 331 S.W.3d 857, 860-61 (Tex.App.--Dallas 2011, pet denied). Deutsche Bank challenged each of these elements below. It is enough for us to address the first element, because the Worthings' argument makes clear the foreclosure related documents were fraudulent only because the assignment was "forged" or "void." Because we find proof of neither here, the claim that the ensuing foreclosure filings were fraudulent necessarily fails.

The Worthings do not address the specific no evidence challenges made to their breach of contract, DTPA, or Texas Finance Code claims. Without any responsive evidence, the trial court was required to grant Deutsche Bank's no-evidence motion for summary judgment on those claims. TEX.R.CIV.P. 166a(i); *see also Leffler v. JP Morgan Chase Bank, N.A.,* 290 S.W.3d 384 (Tex.App.--El Paso 2009, no pet.)(Although an appellant may challenge a summary judgment in a single issue, the appellant's argument in support of that issue must address and negate each ground upon which the trial court could have based its decision.). We overrule Issues One, Two and Three and affirm the trial court's judgment.

July 31, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

16