**Opinion issued June 14, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00224-CV

————————————

**DANIEL YBARRA AND LISA YBARRA, Appellants**

**V.**

**AMERIPRO FUNDING, INC., U.S. BANK, N.A. AS TRUSTEE FOR THE BANC OF AMERICA FUNDING 2005-H TRUST; BANK OF AMERICA, N.A.; NATIONSTAR MORTGAGE, LLC; AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AKA "MERS",**
**Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-64169**

---

## MEMORANDUM OPINION

This case involves a dispute over a home foreclosure. After appellants Daniel

and Lisa Ybarra defaulted on their mortgage, they received a foreclosure notice. The

Ybarras then sued appellees Ameripro Funding, Inc.; U.S. Bank, N.A. as Trustee for the Banc of America Funding 2005-H Trust (the 2005-H Trust); Bank of America, N.A.; Nationstar Mortgage, LLC; and Mortgage Electronic Registration Systems, Inc. (MERS) (collectively appellees), asserting various causes of action and disputing appellees' standing to foreclose. Appellees sought summary judgment on all of the Ybarras' claims, and the trial court ruled in appellees' favor. The Ybarras appeal.

Because the trial court properly granted appellees summary judgment, we affirm.

## Background

In 2005, Daniel purchased a property and received a mortgage loan of $526,476.[1] To evidence the loan, Daniel executed a note promising to repay the loan amount plus interest. He secured the loan with a deed of trust, which he and Lisa executed. The note required Daniel to make regular monthly payments beginning October 1, 2005 and continuing on the first day of each month thereafter until September 1, 2035. The deed of trust contemplated foreclosure if the Ybarras did not comply with their obligations and failed to cure a default.

The deed of trust provided that Mortgage Electronic Registration Systems (MERS) would serve as the deed's beneficiary and the nominee for Lender and

---

[1] He also obtained a second loan, but that loan is not relevant to this lawsuit.

Lender's successors and assigns.[2] The deed made clear that MERS's assignee would become the deed's beneficiary: it stated that MERS "and the successors and assigns of MERS" would be the "beneficiary of this Security Instrument."

Moreover, the deed made clear that MERS (and its assigns) had the right to foreclose on and sell the Property: "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, *the right to foreclose and sell the Property*." (emphasis added). This deed of trust was recorded on August 11, 2005 in the Official Records of Harris County, Texas.

As time went by, MERS exercised its right to assign its interest. Specifically, in 2012, MERS assigned its interest to U.S. Bank, N.A. (successor trustee to Wachovia Bank, N.A.), as Trustee for the 2005-H Trust. In the assignment, MERS stated that it was granting, selling, assigning, transferring, and conveying:

> all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Mary Ann Hierman (listed as Assistant Secretary of MERS) signed and recorded the assignment.

---

[2]     It lists the initial Lender as Ameripro Funding Inc.

In addition to the lender (and its nominee), the loan had a servicer. A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." TEX. PROP. CODE § 51.0001(3). Bank of America, N.A. serviced the mortgage loan at issue at the time of the assignment, and it continued to do so until July 1, 2013, when Nationstar began servicing the loan.

While Nationstar was servicing the loan, the Ybarras defaulted on their loan payments. After some back and forth, the Ybarras received a "Notice of Foreclosure Sale" notifying them that, on November 4, 2014, U.S. Bank (as Trustee for the 2005-H Trust) and Nationstar intended to sell their property. The Ybarras then sued appellees Ameripro, U.S. Bank (as Trustee for the 2005-H Trust), Bank of America, N.A., Nationstar, and MERS, seeking to enjoin the sale, disputing the appellees' standing to foreclose, and asserting numerous additional causes of action including claims for fraud, breach of contract, violations of section 12.002 of the Texas Civil Practice and Remedies Code, and negligence per se.[3]

---

[3]     The crux of the Ybarras' claims on appeal are directed at U.S. Bank (as Trustee for the 2005-H Trust); MERS, the predecessor in interest to U.S. Bank; and Nationstar acting on behalf of the 2005-H Trust. The Ybarras asserted additional claims in their petition on which the trial court granted summary judgment. Because the Ybarras have not challenged the trial court's ruling on those claims on appeal, we do not address them here.

Ameripro, U.S. Bank (as Trustee for the 2005-H Trust), Nationstar, and MERS filed a no-evidence and traditional summary judgment motion on the Ybarras' claims. Bank of America, N.A. also moved separately for summary judgment. The trial court granted both summary judgment motions and dismissed all of the Ybarras' claims.

## Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When reviewing a traditional summary judgment motion, we must determine whether the movant met its burden to establish that (1) no genuine issue of material fact exists, and (2) the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of

the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

## Discussion

The Ybarras argue that they raised a fact issue with regard to their claims that appellees (1) lacked standing to foreclose; (2) breached the parties' contract; (3) committed fraud; (4) violated section 12.002 of the Texas Civil Practice & Remedies Code (prohibiting the recording of fraudulent liens); and (5) committed negligence per se. We address each of these points in turn and conclude that the trial court properly granted summary judgment on the Ybarras' claims.

### Standing to Foreclose

This case focuses in large part on the Ybarras' argument that appellees lacked standing to foreclose on the Ybarras' property. In particular, the Ybarras argue that none of the appellees had an enforceable interest in the Ybarras' property because the alleged transfers of interest in the property were invalid. Thus, they contend, the foreclosing parties lacked standing to foreclose. We disagree.

## A. Applicable Law

Chapter 51 of the Texas Property Code governs the type of foreclosure sale at issue here. *See* TEX. PROP. CODE § 51.002 (addressing non-judicial sale of real property under power of sale conferred by deed of trust or other contract lien); *see also Morlock, L.L.C. v. Nationstar Mortg., L.L.C.*, 447 S.W.3d 42, 47 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Under Chapter 51, a "mortgagee" or "mortgage servicer" may conduct foreclosure proceedings. *See* TEX. PROP. CODE §§ 51.0001(3), (4); 51.002; 51.0025.[4]

Relevant here, Chapter 51 defines "mortgagee" to include a beneficiary of the deed of trust as well as the last person to whom the deed was assigned of record. *See id.* § 51.0001(4). In particular, the statute defines "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *See id.*; *Nationstar*, 447 S.W.3d at 47. It defines "security instrument" as "a deed of trust, mortgage, or other contract lien on an interest in real property." *See* TEX. PROP. CODE § 51.0001(6).

When an assignee of the security interest tries to foreclose, the mortgagor has limited ability to prevent foreclosure by challenging the assignment. *Ferguson v.*

---

[4] "A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee . . . ." TEX. PROP. CODE § 51.0025.

*Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015). Specifically, an obligor who is not a party to an assignment or a third-party beneficiary of the assignment cannot defend against an assignee's efforts to enforce an obligation (here, through foreclosure) on a ground that renders the assignment merely voidable at the election of the assignor—rather than void. *See Morlock, L.L.C. v. Bank of N.Y.*, 448 S.W.3d 514, 517 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Ferguson*, 802 F.3d at 780; *Reinagel v. Deutsche Bank Nat'l Tr.* Co., 735 F.3d 220, 225 (5th Cir. 2013). An obligor may defend, however, on an allegation that an assignment was void. *Reinagel*, 735 F.3d at 225.

This is because an attempted assignment that is merely "voidable" is valid and effective *unless and until* a party entitled to avoid it takes steps to disaffirm it. *Neese v. Lyon*, 479 S.W.3d 368, 378 (Tex. App.—Dallas 2015, no pet.) (emphasis added). Thus, an obligor who is not entitled to void an assignment cannot escape foreclosure by challenging the voidable assignment. *See Morlock*, 448 S.W.3d at 517. In contrast, an assignment that is void has no effect and does not bind any party. *See Abdullatif v. Choudhri*, – S.W.3d –, No. 14-16-00116-CV, 2018 WL 1559995, at \*16 (Tex. App.—Houston [14th Dist.] Mar. 30, 2018, no pet. h.). Thus, a void assignment does not confer an interest on a purported assignee. *See Morlock*, 448 S.W.3d at 517.

**B.      Analysis**

The Ybarras make four allegations concerning appellees' standing. First, they contend that U.S. Bank (as Trustee for the 2005-H Trust) and its predecessor in interest, MERS, lacked standing to foreclose on their property because the assignment from MERS to the 2005-H Trust was void for noncompliance with the terms of the 2005-H Trust's Pooling Service Agreement (PSA). In other words, they contend that appellees were not properly assigned an interest, so they cannot qualify as mortgagees and foreclose on the home. Next, the Ybarras argue that U.S. Bank (as Trustee for the 2005-H Trust) lacked standing to foreclose because it did not own or hold the note (or relatedly, it did not show it paid value for the note); the assignment was the result of fraud and forgery; and the assignment was invalid for failing to identify for whom MERS acted in making the assignment.

**1.      Alleged Noncompliance with Pooling Service Agreement**

The Ybarras first argue that the purported assignment to U.S. Bank (as Trustee for the 2005-H Trust) was void because it violated the 2005-H Trust's Pooling Service Agreement (PSA). Specifically, they contend that the assignment did not go through the requisite chain of parties in the time-period provided for in the Trust's PSA. The Ybarras assert that the allegedly void assignment did not legally transfer any interest into the 2005-H Trust, so U.S. Bank (as Trustee for the 2005-H Trust),

9

"the purported mortgagee," did "not have the requisite title, perfected security interest or standing to proceed in a foreclosure."

The problem with this argument is that the Ybarras may not avoid foreclosure through a claim that would render the assignment merely voidable, but not void. *Morlock*, 448 S.W.3d at 517; *Ferguson*, 802 F.3d at 781. At best, however, this PSA claim would render the assignment voidable.

To begin, Ybarras are not parties to the PSA; nor do they contend that they are third-party beneficiaries of the PSA. They also presented no evidence that the parties to the PSA intended to benefit them. *See Basic Cap. Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) (Texas law presumes "that parties contracted for themselves . . . unless it 'clearly appears' that they intended a third party to benefit from the contract"). Accordingly, they may not enforce the PSA's terms. *See, e.g.*, *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) ("A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit."); *Morlock*, 448 S.W.3d at 517 ("[A]s a nonparty to the transaction, Morlock lacks standing to claim that the assignment from MILA to Countrywide was executed without authorization."); *see also Ferguson,* 802 F.3d at 781–82; *Reinagel*, 735 F.3d at 228.

Moreover, even if we were to assume that the assignment violated the PSA, the Ybarras would have shown only that the assignment was voidable—that one entitled to do so could sue for breach of the PSA. They have not shown that a purported breach of the PSA would render the assignment void.[5] *See, e.g.*, *Morlock*, 448 S.W.3d at 517 (challenge that assignment was unauthorized or even procured by fraud would render assignment voidable not void; forgery, by contrast, voids the assignment); *Ferguson*, 802 F.3d at 781–82 ("[Mortgagors] posit that the assignment to BNY was void because it violated the Trust's PSA. Our decision in *Reinagel* directly defeats that argument under Texas law."); *see also Reinagel*, 735 F.3d at 228.

The Fifth Circuit has addressed this question under Texas law and has come to the same conclusion. For instance, in *Ferguson*, the Fifth Circuit explained that "home-loan borrowers—such as the Fergusons—had no standing under Texas law to enforce a PSA because they were neither parties to the PSA nor intended third-party beneficiaries under it." 802 F.3d at 782. The Court also stated, even if the borrowers had standing to enforce the PSA as intended third-party beneficiaries, their cause of action would be for breach of the PSA, and the assignment would thus

---

[5] Even if the Ybarras had standing to enforce the PSA as intended third-party beneficiaries, their cause of action would be for breach of the PSA, and the assignment would still be voidable but not void. *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 781 (5th Cir. 2015).

be voidable but not void. *Id.* "Therefore, the borrowers lacked standing under Texas law to challenge the lender's efforts to foreclose on the ground that it violated the PSA." *Id.*; *see also Reinagel*, 735 F.3d at 228 (similar); *Sigaran v. U.S. Bank Nat'l Ass'n*, 560 F. App'x 410, 413 (5th Cir. 2014) (similar).

Because potential noncompliance with the PSA would render the assignment merely voidable, the Ybarras cannot defeat foreclosure through their argument that the assignment violated the PSA. *Morlock*, 448 S.W.3d at 517; *Ferguson*, 802 F.3d at 781–82; *Reinagel*, 735 F.3d at 225.

## 2. Owner and Holder of the Note

Next, the Ybarras argue that U.S. Bank (as Trustee for the 2005-H Trust) lacked standing to foreclose because it was not the owner or holder of the note.

Our Court has previously rejected the Ybarras' argument. Our precedent holds that, in Texas, "a deed of trust may be enforced by the mortgagee, regardless of whether the mortgagee also holds the note." *Morlock*, 448 S.W.3d at 518 ("Since the Bank proved that it is the owner of the deed of trust, it established its interest in the property and right to foreclose as a matter of law regardless of whether it was also a holder or the owner of the note."). Our sister court is in accord. *See Nationstar*, 447 S.W.3d at 47 ("Morlock's allegation that Nationstar is not the owner or holder of the Note is irrelevant with respect to Nationstar's right to enforce the Deed of Trust

12

through non-judicial foreclosure"); *see also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) (similar).

Here, too, MERS and its assigns (i.e., U.S. Bank as Trustee for the 2005 H-Trust) were entitled to foreclose based on the deed of trust. MERS—which was identified in the deed as its beneficiary—qualified as a mortgagee under Chapter 51. TEX. PROP. CODE § 51.0001(4). Texas law and the deed granted MERS the ability to foreclose. The deed permitted MERS to assign its interests, and the assignment, in turn, assigned "all beneficial interest under that certain Deed of Trust . . . and all rights accrued or to accrue under said Deed of Trust." The deed also made clear that MERS's assigns would be the deed's beneficiaries. Thus, through MERS's assignment, the 2005-H Trust (along with U.S. Bank, as Trustee for the 2005-H Trust) gained standing to foreclose. *See Morlock*, 448 S.W.3d at 518; *Nationstar*, 447 S.W.3d at 47.[6]

### 3. Fraud and Forgery

The Ybarras' fraud and forgery contentions are also unavailing. The Ybarras allege that the assignment from MERS to U.S. Bank was void because Mary Ann Hierman's signature on the assignment was invalid, so the assignment was the result

---

[6] In light of our conclusion here, we need not address the Ybarras' additional arguments concerning the note, including its assertion that the 2005-H Trust failed to show it paid value for the note.

13

of fraud and forgery. In support of this contention, the Ybarras assert that a review of different signatures of Mary Ann Hierman shows that some are identical but others are not. The Ybarras argue that this creates a genuine issue of material fact as to whether the 2012 Assignment was a forgery.

As an initial matter, to the extent the Ybarras claim is one for fraud rather than forgery, they cannot defeat foreclosure on this basis. Under Texas law, "[d]eeds procured by fraud are voidable only, not void." *Morlock*, 448 S.W.3d at 517 (quoting *Nobles v. Marcus,* 533 S.W.2d 923, 926 (Tex. 1976)).[7] For the reasons explained above, the Ybarras cannot defeat foreclosure by arguing that the assignment was voidable, rather than void.

Nevertheless, "[a] forged deed is void." *Vasquez v. Deutsche Bank Nat'l Trust Co., N.A.*, 441 S.W.3d 783, 787–88 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Thus, if the assignment was forged—if it was signed by one who purported to act as another—the assignment would be void. *See Morlock*, 448 S.W.3d at 517.

The Ybarras have failed to make the necessary showing to defeat summary judgment on their forgery claim. They offered no evidence—just their unsubstantiated suspicion—that the assignment was forged. For example, they

---

[7]     When someone without authorization signs a conveyance on behalf of a grantor, for instance, the fraud action to set aside the voidable assignment belongs to the grantor—not a third-party. *Morlock, L.L.C. v. Bank of N.Y.*, 448 S.W.3d 514, 517 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Nobles v. Marcus,* 533 S.W.2d 923, 926–27 (Tex. 1976)).

14

offered no testimony from Mary Ann Hierman, an expert, or any other person to support their contention that Hierman did not execute this assignment. They offered no evidence on whether she did or did not execute (or authorize the execution of) any document they reference. And they offered no evidence that someone else signed Hierman's name on this assignment, purporting to be her. Their mere unsubstantiated allegation that Hierman's signature may look different on distinct documents does not create a fact issue (or constitute some evidence) as to whether *this* assignment was forged. *See Worthing v. Deutsche Bank Nat'l Trust Co. for Agent Sec. Inc*., 545 S.W.3d 127, 134-36 (Tex. App.—El Paso, no pet.) (rejecting mortgagors' claims that assignment of deed was forged and thus void where mortgagors failed to meet their burden of presenting evidence of forgery or explaining how submitted evidence supported forgery allegation); *see also Chance v. CitiMortgage, Inc*., 395 S.W.3d 311, 315–16 (Tex. App.—Dallas 2013, no pet.) ("[M]ere speculation or conjecture regarding the authenticity of the signature cannot defeat competent summary judgment evidence."); *Reinagel*, 735 F.3d at 227 (Texas recognizes typed or stamped signatures—and presumably also scanned signatures—so long as they are rendered by or at the direction of the signer); *Rodriguez v. Bank of Am., N*.A., No. SA-12-CV-00905-DAE, 2013 WL 1773670, at *6 (W.D. Tex. Apr. 25, 2013) ("Even if Ms. Slee worked as part of a 'document mill' and had different signature variations, as long as MERS was aware of this and did not object

15

to it, the assignment—though perhaps fraudulent—would not rise to the level of a forgery and thus would be voidable, not void. . . . Plaintiff's allegations that Ms. Slee merely lacked authority to sign on behalf of MERS would render the assignment merely voidable."), *aff'd*, 577 F. App'x 381 (5th Cir. 2014).

### 4. Identification

Finally, the Ybarras challenge the assignment from MERS to U.S. Bank (as Trustee for the 2005-H Trust) as "completely unclear" because it failed to identify "for whom MERS [was] acting i[n] its capacity as the 'nominee' for Ameripro or [Ameripro's] successors or assigns." The Ybarras have presented no evidence or authority—nor have we found any—to support their position that MERS's assignment here was void ab initio on this basis.[8]

Federal courts addressing similar arguments have rejected them. *See e.g.*, *Bynane v. Bank of N.Y. Mellon*, No. H-15-2901, 2015 WL 8764272 (S.D. Tex. Dec. 15, 2015) ("Plaintiff argues that because MERS held the Note only as a nominee, and because the Assignment does not identify for whom MERS was a nominee, Plaintiff has validly pleaded that the Assignment in this case is void *ab initio* for lack of the essential elements of a contract, that is two identifiable real parties in interest. Plaintiff's argument is without merit, factually and legally.") (internal citations

---

[8] Notably, the 2012 assignment of the deed of trust identifies Ameripro Funding, Inc. as the original lender.

omitted); *Morgan v. Gov't Nat'l Mortg. Ass'n*, No. H-15-1803, 2016 WL 3058301, at *4 (S.D. Tex. May 31, 2016) ("[T]he deed of trust indicates that MERS could exercise the rights granted to the lender by the deed of trust. Morgan agreed to this when he signed the deed of trust. There was no need to identify the lender in the assignment.") (internal citations omitted).[9]

### Breach of Contract

The Ybarras argue in the alternative that they raised a genuine issue of fact on whether the appellees breached the deed of trust. We disagree.

**A.     Applicable Law**

"The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *CCC Grp., Inc. v. S. Cent. Cement, Ltd.,* 450 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

**B.     Analysis**

The Ybarras argue the 2005-H Trust breached the deed of trust by relying "on an assignment that was void *ab initio* (the 2012 Assignment) and invalid

---

[9]     To the extent the Ybarras' claims are directed at Nationstar, Nationstar qualifies as a servicer under Chapter 51 and could foreclose on behalf of the mortgagee, U.S. Bank (for the 2005-H Trust). *See* TEX. PROP. CODE § 51.0025.

endorsements, impairing their standing under both Texas statute and the Deed of Trust." The gravamen of the Ybarras' breach of contract claim thus hinges on their contentions that appellees lacked standing to foreclose and that the assignment was void. But we have already rejected these arguments. The Ybarras failed to raise a fact issue on this basis to support their breach of contract claim.

The Ybarras also argue that the 2005-H Trust breached the deed of trust because the deed required the foreclosing party to be a "lender," but, they contend, the 2005-H Trust was not a lender under its terms. The deed refutes that argument. The deed identified MERS and MERS's assigns as its beneficiary, and it provides that, as *nominee* for the lender and lender's successors and assigns, MERS (the predecessor in interest to U.S. Bank, which was Trustee for the 2005-H Trust) had the right to foreclose.

The trial court did not err in granting summary judgment on the Ybarras' breach of contract claim.

## Fraud

The Ybarras next allege that the trial court erred in granting summary judgment on their fraud claim. It did not.

"A plaintiff seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any

knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011).

For their fraud claims to survive summary judgment, the Ybarras were required to put forth some evidence that the defendants knowingly or recklessly made a false misrepresentation. The Ybarras did not do so.

The alleged material misrepresentation the Ybarras identify was Nationstar's and the 2005-H Trust's purported representation that "they had title to the Property at the time [they] filed the 2014 Notice of Sale" and "[t]his representation was aided by the 2012 Assignment previously filed by BANA." But the Ybarras produced no evidence that the appellees knowingly or recklessly misrepresented their rights in the Notice of Foreclosure Sale (or in or by the 2012 assignment).[10]

---

[10]    The Notice of Foreclosure Sale provides that "Nationstar Mortgage, LLC, is acting as Mortgage Servicer for the Mortgagee of the Note and Deed of Trust associated with the above-referenced loan." It further states that "Nationstar Mortgage, LLC, as Mortgage Servicer, is representing the Mortgagee . . . Bank of America Funding Corporation Mortgage Pass-Through Certificates, Series 2005-H, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee," and notes that MERS was the original mortgagee (as nominee for the lender, Ameripro Funding, Inc.).

The trial court did not err in granting summary judgment on the Ybarras' breach of contract claim.

### Texas Civil Practice & Remedies Code § 12.002

We are likewise unpersuaded by the Ybarras' argument that they defeated summary judgment on their section 12.002 claim.

**A.     Applicable Law**

Section 12.002 of the Texas Civil Practice & Remedies Code provides that "[a] person may not make, present, or use a document or other record with:

> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
>
> (3) intent to cause another person to suffer: (A) physical injury; (B) financial injury; or (C) mental anguish or emotional distress.[11]

---

[11]     "Court record" has the same meaning as assigned in section 37.01 of the Penal Code. TEX. CIV. PRAC. & REM. CODE § 12.001(1); *see* TEX. PENAL CODE § 37.01(1) ("'Court record' means a decree, judgment, order, subpoena, warrant, minutes, or other document issued by a court."). "'Lien' means a claim in property for the payment of a debt and includes a security interest." TEX. CIV. PRAC. & REM. CODE § 12.001(3).

TEX. CIV. PRAC. & REM. CODE § 12.002(a).

**B.   Analysis**

The Ybarras argue that appellees violated Texas Civil Practice and Remedies Code section 12.002 because they recorded MERS's 2012 assignment of the deed of trust, knowing that it was fraudulent, with the intent that the assignment be given legal effect, and with the intent to cause the Ybarras financial injury.

Even if we were to assume without deciding that the assignment of the deed of trust fell within the definition of a "court record" or "lien" as those terms are defined in section 12.001, the Ybarras have not established the necessary elements of their claim. To begin, the Ybarras' theory is premised on their argument—which we already rejected—that the assignment was void. *See Ferguson*, 802 F.3d at 783 (rejecting a similar argument).

In any event, the Ybarras failed to present any evidence that the assignment was executed with the intent to cause them to suffer physical injury, financial injury, or mental anguish. *See Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.) (affirming grant of summary judgment on debtor's section 12.002 claim where record had no evidence that appellees intended to cause debtor financial injury)*; see also Lassberg v. Bank of Am., N.A.*, 660 F. App'x 262, 268–69 (5th Cir. 2016) (affirming grant of summary judgment on mortgagor's section 12.002 claim when mortgagor provided no evidence of how assignment of

deed or appointment of substitute trustees were executed with intent to cause mortgagor injury).

The trial court did not err in granting appellees summary judgment on the Ybarras' section 12.002 claim.

Negligence Per Se

Finally, the Ybarras argue that they raised a fact issue with regard to their negligence per se claim. They also argue that their claim is not time-barred.

**A.    Applicable Law**

**1.    Negligence Per Se**

"Negligence per se applies when the courts have determined that the violation of a particular statute is negligence as a matter of law." *Trevarthen v. U.S. Bank Nat'l Ass'n,* No. A-13-CA-154-SS, 2013 WL 12099974, at * 3 (W.D. Tex. Apr. 29, 2013), *aff'd*, *Trevarthen v. U.S. Bank Nat. Ass'n*, 551 F. App'x 148 (5th Cir. 2014) (citation omitted). To establish negligence per se, a plaintiff must prove that: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury. *Miranda v. TriStar Convenience Stores, Inc.*, No. 01-11-01073-CV, 2013 WL 3968337, at *6 (Tex. App.—Houston [1st Dist.] Aug. 1, 2013, no pet.) (mem. op.) (citing *Ambrosio*

*v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).

## 2. Texas Local Government Code § 192.007

Chapter 192 of the Texas Local Government Code provides guidelines for "instruments to be recorded by counties." TEX. LOCAL GOV'T CODE §§ 192.001–007. Section 192.007(a) states that "[t]o release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded." TEX. LOCAL GOV'T CODE § 192.007(a).

## B. Analysis

In their petition, the Ybarras assert that appellees violated section 192.007 of the Texas Local Government Code "by failing to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants filed or caused to be filed, registered, or recorded in the deed records of Texas in the same manner as the original instrument was required to be filed, registered, or recorded." They contend that this alleged statutory violation constituted negligence per se.

Even if we were to assume a statutory violation (we make no such finding) and that the Ybarras' claim is not time-barred, the Ybarras present no authority supporting their contention that an alleged violation of section 192.007 would

23

support a claim for negligence per se. *See Louisiana-Pac. Corp. v. Knighten,* 976 S.W.2d 674, 675 (Tex. 1998); *Burgess v. Bank of Am., N.A.*, Cv. No. 5:14-CV-00495-DAE, 2014 WL 5461803, at *12 (W. D. Tex. Oct. 27, 2014) (plaintiff failed to state a claim for negligence per se based on alleged violation of section 192.007); *Trevarthen*, 2013 WL 12099974, at *3 (rejecting negligence per se claim based on violation of section 192.007, concluding that statutory violation claim fails and "there is simply no indication" that this statute establishes "a specific standard of conduct different from the common-law standard of ordinary care"); *see also Williams v. Sadrudeen*, No. 01-98-00851-CV, 1990 WL 447606, at *2 (Tex. App.—Houston [1st Dist.] June 17, 1999, pet. denied) ("Not every violation of a statute or administrative rule forms a basis for negligence per se.").

We cannot conclude that the trial court erred in granting appellees summary judgment on the Ybarras' negligence per se claim.

\*　　　　　　　　　　\*　　　　　　　　　　\*

Because we conclude the trial court properly granted appellees summary judgment on all of the Ybarras' claims, we overrule the Ybarras' issues on appeal.[12]

---

[12]　For the same reasons, Bank of America N.A. (the mortgage servicer before Nationstar) and Ameripro (the original lender) were entitled to summary judgment on the related claims against them.

## Conclusion

We affirm the judgment of the trial court.

Jennifer Caughey
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.