COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | |
| WADE OIL & GAS, INC. | | |
| | § | No. 08-12-00038-CV |
| Appellant, | | |
| | § | Appeal from |
| v. | | |
| | § | 236th District Court |
| TELESIS OPERATING COMPANY, | | |
| INC., VANTAGE ENERGY, LLC, | § | of Tarrant County, Texas |
| AND VANTAGE FORT WORTH | | |
| ENERGY, LLC, | § | (TC # 236-235985-09) |
| | | |
| Appellees. | § | |

## O P I N I O N

Wade Oil & Gas, Inc. appeals an order granting summary judgment in favor of Telesis

Operating Company, Inc. (Telesis), Vantage Energy, LLC, and Vantage Fort Worth Energy,

LLC (Vantage or the Vantage Appellees). For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL SUMMARY

This appeal involves two separate contracts which the opinion will refer to as: (1) the

BARA Override Assignment; and (2) the Telesis Exclusive Listing Agreement. Wade Oil & Gas

sued Telesis asserting that it breached the Exclusive Listing Agreement. It also sued Vantage

alleging that it breached the BARA Override Assignment and tortiously interfered with the

Exclusive Listing Agreement.

In 2004, BARA Corporation conveyed certain mineral properties to Telesis. The BARA Override Assignment is a shorthand reference for a series of assignments, with an effective date of May 1, 2004, from Telesis to Glenn Wade of a 2% override in oil and gas leases located in several Texas counties. Glenn Wade is a registered professional engineer and the President of Wade Oil & Gas, an oil and gas properties broker.[1]

In 2007, Telesis began negotiating with Black Mountain Energy, Inc. to sell certain oil and gas properties. Wade contacted Telesis about the properties and the parties reached an agreement for Wade to be the exclusive listing agent of the oil and gas properties for a three-month period. The parties signed an exclusive listing letter agreement on November 13, 2007 (the Telesis Exclusive Listing Agreement).

Pursuant to the Exclusive Listing Agreement, Telesis gave Wade the exclusive right to solicit and seek offers to purchase the mineral property over a three-month term beginning on November 13, 2007 and ending on February 9, 2008. In the event of a sale of the working interest portion of the property listed in Exhibit A of the Exclusive Listing Agreement, Telesis agreed to pay Wade 1% of the purchase price and to assign to Wade 2% of 8/8ths overriding royalty interest (ORRI), proportionately reduced based on the working interest sold by both the operator and all non-operating working interest partners. In the event of a sale of the working interest portion described in Exhibits B and C of the Exclusive Listing Agreement, Telesis agreed to pay Wade a cash commission in the amount of 2% of the purchase price. The parties exempted any purchase of the property by Black Mountain Energy from the foregoing provisions and instead provided that Wade's compensation would be 1% of the purchase price. The Exclusive Listing Agreement also addressed the receipt by Telesis of any offers to purchase the property within 180 days after the term. If Telesis received an offer to purchase the property

---

[1] The opinion will refer to Wade Oil & Gas as Wade and to Glenn Wade as Mr. Wade.

during that time period from a purchaser identified by Wade to Telesis during the term and a sale was consummated, Telesis would be obligated to compensate Wade under the terms of the Exclusive Listing Agreement. Sometime during the term and prior to February 9, 2008, Vantage contacted Telesis about purchasing some of the oil and gas properties covered by the Telesis Exclusive Listing Agreement. Vantage contacted Telesis directly and was not solicited by Wade. Jim Murphy of Telesis told Wade of Vantage's interest and advised that although Wade would not be entitled to a commission under the Agreement, Telesis would pay Wade a 1% fee if Vantage purchased the property and if Wade would assist with the due diligence for the purchase.[2] Vantage did not make an offer during the term of the Exclusive Listing Agreement, but Telesis accepted an offer by Vantage during the 180 day period following expiration of the term. Telesis paid Wade $87,730 at the closing (1% of the purchase price), but did not pay him the 2% override. The wells and leases conveyed by Telesis to Vantage were burdened by the BARA Override Agreement.

In February of 2009, Wade's attorney sent a demand letter to Telesis asserting that it owed Wade a 2% override with respect to the Vantage sale. Telesis informed Wade's counsel that it did not owe the override and Wade filed suit alleging breach of contract, specific performance, and tortious interference with the contract. The suit also sought declaratory relief with respect to Wade's rights under the agreement. Wade later amended its suit to add claims against Vantage. Wade alleged that Vantage breached both the Telesis Exclusive Listing Agreement and the BARA Override Assignment and tortiously interfered with the Telesis Exclusive Listing Agreement. Wade also sought declaratory relief with respect its rights under the BARA Override Assignment.

---

[2] Wade disputes having any oral agreements with Telesis.

Telesis filed a traditional motion for summary judgment while Vantage moved for summary judgment on both traditional and no evidence grounds. Wade sought partial summary judgment with respect to its breach of contract and specific performance claims against Telesis. The trial court denied Wade's motion for summary judgment and granted summary judgment in favor of both Telesis and Vantage.

## TELESIS

In Issue One, Wade challenges the summary judgment granted in favor of Telesis with respect to the breach of contract, specific performance, and declaratory judgment causes of action.[3] More specifically, it argues that: (1) the Telesis Exclusive Listing Agreement did not require Wade to introduce Vantage to Telesis or be a procuring cause of the sale to Vantage for Wade to be entitled to the 2% overriding royalty portion of the commission; (2) the statute of frauds does not excuse the failure of Telesis to fulfill its obligation to pay the 2% overriding royalty portion of the commission; and (3) Telesis failed to satisfy its summary judgment burden.[4]

*Standard of Review*

The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). Evidence

---

[3] Telesis also obtained summary judgment with respect to Wade's claim that Telesis tortiously interfered with the Exclusive Listing Agreement. Wade concedes on appeal that Telesis could not interfere with an agreement to which it is a party. Consequently, the opinion will not address that aspect of the summary judgment.

[4] In this same issue, Wade also contends that Vantage failed to carry its summary judgment burden. We will address this portion of Issue One with Issue Two which relates solely to Vantage.

favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Scown v. Neie*, 225 S.W.3d 303, 307 (Tex.App.--El Paso 2006, pet. denied). We review the grant or denial of a traditional motion for summary judgment *de novo*. *Valence Operating Company v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex.App.--Dallas 2009, pet. denied).

*Breach of Contract, Specific Performance, and Declaratory Relief*

Telesis moved for summary judgment on the ground that it did not breach the Exclusive Listing Agreement because Wade did not identify Vantage as a potential purchaser during the term, and therefore, Wade was not entitled to receive the overriding royalty interest (ORRI). The relevant portions of the Telesis Exclusive Listing Agreement provided as follows:

> This letter shall serve as our agreement that Wade Oil & Gas, Inc. ('Wade'), is granted the exclusive right to solicit and seek offers to purchase the above referenced mineral property, but more particularly described in Exhibits 'A', 'B', 'C' and 'D' attached hereto and made a part hereof (the 'Property') from

one or more qualified, financially responsible parties during the term of this agreement from the date hereof until February 9th, 2008 (the 'Term'). During such Term you shall not list the Property with, or grant any right to seek and solicit offers to purchase the Property to any other person or entity.

In the event of a sale of the working interest portion of the Property described in Exhibit 'A', either whole or in part, the undersigned agrees at closing to compensate Wade an amount equal to 1% of the purchase price in cash and by assigning to Wade or its assigns 2% of 8/8ths overriding royalty interest, proportionately reduced based on the working interest sold by both the operator and all non-operating working interest partners. In the event of a sale of the working interest portion of the Property described in Exhibits 'B' and 'C', either whole or in part, the undersigned agrees at closing to compensate Wade a cash commission in the amount of 2% of the purchase price. In the event of the sale of the equipment portion of the Property described in Schedule 'D', the undersigned agrees at closing to compensate Wade a separate and additional commission based on the Lehman Scale for the portion of proceeds allocated to the equipment.

Notwithstanding the above, in the event that the purchaser is Black Mountain Energy, Inc., or any of its principles, then Wade's compensation will be 1% of the purchase price.

The effective date of the assignment shall be the effective date of the sale. *If any offers are received to purchase the Property by Telesis Operating Co., Inc. within 180 days after the Term that were identified by Wade to Telesis Operating Co., Inc. during the Term and a sale is consummated, then Telesis Operating Co., Inc. shall be obligated to compensate Wade as discussed in this paragraph.* [Emphasis added].

The Exclusive Listing Agreement does not define or explain the phrase "identified by Wade to Telesis" as used in the emphasized portion of the Agreement and the parties offer diametrically opposed interpretations of the Agreement.

In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Insurance Company of America*, 341 S.W.3d 323, 333 (Tex. 2011); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In identifying the parties' intent, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Italian Cowboy*, 341 S.W.3d at 333, *quoting J.M. Davidson*, 128

S.W.3d at 229. We begin this analysis with the contract's express language. *Italian Cowboy*, 341 S.W.3d at 333. If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If, on the other hand, the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. *J.M. Davidson*, 128 S.W.3d at 229. In such a case, a court may consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *Italian Cowboy*, 341 S.W.3d at 333-34.

Wade argues that the Agreement gave it an exclusive right to receive offers and Telesis could not negotiate directly with Vantage or receive an offer without the involvement of Wade. Under this interpretation of the Agreement, Wade claims it would have been entitled to the commission if the property sold during the term of the Agreement even if it played no role in the sale and Vantage negotiated directly with Telesis. It reasons that the highlighted paragraph related to offers received after the term should be given the same construction. In effect, Wade contends that the Agreement gives it an exclusive right to sell the property rather than an exclusive agency.

There is an important distinction between an "exclusive agency" and an "exclusive right to sell." *Alba Tool and Supply Co., Inc. v. Industrial Contractors*, 585 S.W.2d 662, 664 (Tex. 1979). If an owner gives the broker an exclusive right to sell, the owner is precluded from selling the property independent from the broker. *See Newman v. McClure*, 459 S.W.2d 703, 705 (Tex.Civ.App.--Fort Worth 1970, no writ); *Parks v. Underwood*, 280 S.W.2d 320, 324 (Tex.Civ.App.--Dallas 1955, writ ref'd n.r.e.). In such a case, the principal must pay a

commission to the agent regardless of the fact that the principal has arranged the sale of the property. *Alba*, 585 S.W.2d at 664; *see Newman*, 459 S.W.2d at 705. In an exclusive agency, the principal has a right to sell without the involvement of the agent and the principal would not be required to pay a commission to the agent. *Alba*, 585 S.W.2d at 664.

The Exclusive Listing Agreement does not give Wade an exclusive right to *receive* offers as it contends, but Wade does have an exclusive right to solicit or seek offers. The Agreement precludes Telesis from listing the property with any other brokers or soliciting offers through any other agents, but it does not give Wade an exclusive right to sell. *See Alba*, 585 S.W.2d at 664-65. Consequently, Telesis reserved its right to sell the property independent of Wade and it was not obligated to pay Wade a commission for any sale it negotiated directly with a purchaser. With this understanding of the Agreement, we will examine the paragraph related to offers received after the Agreement's term.

Telesis interprets the Agreement as requiring Wade to introduce or bring a potential buyer to the attention of Telesis during the term in order to earn its commission for an offer received after the term. Wade counters that it is not required to take any action to identify or introduce the potential buyer and it is sufficient if the identity of the buyer merely becomes known to Wade and Telesis during the term.

The paragraph at issue is not a model of clarity. As written, it requires Wade to identify the *offer*, not the potential buyer, during the term of the Agreement. It would be impossible for Wade to perform under this interpretation of the Agreement because this paragraph applies only to offers received during the 180-day period following the term of the Agreement and Wade obviously could not identify an offer received *after* the term as an offer received *during* the term. We will avoid construing the Agreement in a manner which makes performance impossible. *See*

*Temple-Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984)(holding that "a construction rendering the contract possible of performance will be preferred to one that renders its performance impossible or meaningless"); *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109, 115 (Tex. 1978)("If two constructions [of a writing] are possible, a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless."). We will interpret the Agreement as requiring Wade to take some affirmative action to identify the prospective purchaser to Telesis during the Agreement's term. Accordingly, we reject Wade's assertion that it was not required to take any action identifying Vantage to Telesis as a prospective purchaser during the term.

The summary judgment evidence shows that Vantage did not contact Telesis through Wade but instead contacted Telesis directly. Wade did not provide the name of Vantage to Telesis as a potential buyer. In fact, Telesis made Wade aware of Vantage's interest in the properties. Vantage's CEO, Roger Biemans, testified in his deposition that Vantage had been looking at opportunities to acquire mineral interests or leases across the Fort Worth basin for a year and a half and discovered that Telesis had properties through review of public information. James Murphy, principal of Telesis, testified that Biemans told him in their initial conversation that he and his team at Vantage had been buying properties in the North Texas area and they had noticed Telesis's oil and gas lease signs adjacent to the properties they were buying. Murphy notified Mr. Wade about Vantage's interest and advised him that Wade would not be entitled to a commission under the Agreement but he would receive a 1% fee for performing some due diligence and data management. According to Murphy, he and Mr. Wade had a handshake agreement. Murphy also testified that Wade did not identify Vantage as a potential buyer. The

summary judgment evidence submitted by Telesis showed that Vantage became interested in the Telesis properties based on its own research and it contacted Telesis directly without any involvement on the part of Wade. The evidence established that Wade did not take any action to identify Vantage to Telesis.

Wade concedes that it did not introduce Vantage to Telesis, but it argues that a fact issue exists with respect to whether it identified Vantage as a buyer. First, it relies on evidence that Vantage had in its possession a copy of Wade's exclusive offering related to the property. During discovery, Vantage produced a copy of a document titled "Exclusive Oil and Gas Property Offering" related to the properties at issue, but Vantage's CEO did not know how it had come into Vantage's possession. He assumed that it had come from Wade Oil & Gas. Wade does not explain how this evidence satisfies its obligation under the Agreement of identifying Vantage as a prospective buyer to Telesis. Further, there is no summary judgment evidence establishing that Vantage obtained the copy of the offering during the term of the Agreement. Consequently, this evidence does not raise a genuine issue of material fact sufficient to preclude summary judgment.

Wade also contends that a fact issue exists with respect to whether it identified Vantage as a potential buyer because Mr. Wade attended meetings concerning the prospective sale and Vantage negotiated a confidentiality agreement with Wade to be granted access to Wade's proprietary information. Both of these events occurred after Telesis notified Mr. Wade of Vantage's interest in the property. Consequently, this evidence does not create a fact issue with respect to whether Wade identified Vantage as a potential buyer to Telesis during the term.

Telesis conclusively established that Wade was not entitled to the 2% override, and therefore, it did not breach the Exclusive Listing Agreement. *See Silva v. Reliant Energy Power*

*Generation, Inc.*, No. 14-09-00809-CV, 2011 WL 782036, at *4 (Tex.App.--Houston [14th Dist.] 2011, no pet.)(rejecting argument that agent was entitled to commission because it was an "exclusive" contract where contract did not give agent exclusive right to sell and agent failed to identify the buyer to the principal as required by the contract).  Because Telesis established its right to summary judgment with respect to Wade's causes of action for breach of contract, specific performance, and declaratory relief, it is unnecessary to address whether the trial court erred by granting summary judgment in favor of Telesis on its affirmative defense of statute of frauds.  We overrule Issue One.

### VANTAGE

In Issue Two, Wade challenges the summary judgment granted in favor of Vantage on Wade's breach of contract, specific performance, and declaratory judgment claims related to the Telesis Exclusive Listing Agreement, as well as the breach of contract and declaratory judgment claims related to the BARA Override Assignment.  Wade also alleges that the trial court erred by granting summary judgment on its claim that Vantage interfered with the Exclusive Listing Agreement.

#### *No Evidence Motion for Summary Judgment*

Vantage filed a no-evidence motion for summary judgment with respect to all of Wade's claims against it.  On appeal, Wade does not address the no-evidence motion for summary judgment although it does contend that fact issues exist which preclude summary judgment in favor of Vantage on its tortious interference claim.  We will construe Wade's argument as challenging the no-evidence summary judgment with respect to the tortious interference claim.  When a trial court grants summary judgment without specifying the exact basis for its ruling, the appellant is obligated to challenge each ground of the summary judgment motion on appeal.  *See*

*Cincinnati Life Insurance Company v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). If the appellant does not challenge one of the grounds for summary judgment, the judgment may be affirmed on that ground alone. *Humane Society of Dallas v. Dallas Morning News, L.P.*, 180 S.W.3d 921, 923 (Tex.App.--Dallas 2005, no pet.). Consequently, the trial court's judgment must be affirmed on the breach of contract, specific performance, and declaratory judgment claims even if Vantage was not entitled to summary judgment on traditional grounds.

### *Breach of Contract, Specific Performance, and Declaratory Relief Claims Related to the Telesis Exclusive Listing Agreement*

Vantage moved for traditional summary judgment on Wade's breach of contract, specific performance, and declaratory judgment claims based on the Telesis Exclusive Listing Agreement. Neither of the Vantage Appellees is a party to the Exclusive Listing Agreement. Consequently, they could not breach the agreement and Wade cannot sue Vantage for specific performance under the Agreement. Further, Wade cannot maintain a declaratory judgment action against Vantage with respect to his rights under that Agreement. *See* TEX.CIV.PRAC.& REM.CODE ANN. 37.006 (a)(West 2008)("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."). The trial court did not err by granting summary judgment on these claims. It is unnecessary to address whether the court properly granted summary judgment on the affirmative defense of statute of limitations.

### *Tortious Interference with the Telesis Exclusive Listing Agreement*

Vantage sought summary judgment on the tortious interference claim under TEX.R.CIV.P. 166a(i). The Texas Rules of Civil Procedure permit a party to move for a no-evidence summary judgment "without presenting summary judgment evidence," but they require the moving party to "state the elements as to which there is no evidence." TEX.R.CIV.P. 166a(i); *Aguilar v.*

*Morales*, 162 S.W.3d 825, 834 (Tex.App.--El Paso 2005, pet. denied). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. *Aguilar*, 162 S.W.3d at 834.

A no-evidence motion for summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). We view the evidence in the light most favorable to the non-movant, and we must disregard all contrary evidence and inferences. *Id*. at 751. A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element. *Id*. There is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Ianni v. Loram Maintenance of Way, Inc*., 16 S.W.3d 508, 513 (Tex.App.--El Paso 2000, pet. denied). Evidence that fails to constitute more than a mere scintilla is, in legal effect, no evidence at all. *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001).

The elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was a proximate cause of the claimant's damage; and (4) actual damage or loss occurred. *Prudential Insurance Company of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Vantage's motion alleged there was no evidence that (1) Vantage committed any act of interference that was willful and intentional with respect to the Exclusive Listing Agreement, or that (2) any alleged act of interference proximately caused Wade's damage. The only act of interference identified by Wade is Roger Biemans' statement made during a meeting with Telesis that he did not want a broker involved. Biemans made this statement after Telesis mentioned the existence of the exclusive listing agreement. He did not

state that the involvement of a broker would "kill the deal" or words to that effect. Even assuming that this lone statement is sufficient to raise a fact issue on the act of interference element, there is no evidence that the statement proximately caused any breach on the part of Telesis. We have already concluded that Telesis established its entitlement to summary judgment on the breach of contract claim against it. Further, there is simply no evidence that Biemans' statement caused Telesis to not pay the 2% override. The trial court properly granted summary judgment in Vantage's favor on the tortious interference claim. Issue Two is overruled. Having overruled both issues, we affirm the judgment of the trial court.

August 21, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.