

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EVELYN GARZA, Individually and on Behalf of RUBEN ROBERTO GARZA, Deceased, MALORIE ELISSA GARZA, VALERIE MARIE GARZA, and ALICE HERNANDEZ GARZA, | § § § | No. 08-21-00044-CV |
| | § | Appeal from the |
| Appellants, | § | 112th Judicial District Court |
| v. | | of Crockett County, Texas |
| RDL ENERGY SERVICES, LP, RDL ENERGY, LLC and JPH HOLDINGS, LLC, | § § | (TC# 19-02-07955-CV) |
| Appellees. | § | |

## **O P I N I O N**

Once again, we face the recurrent and sometimes thorny question of whether an employer can be vicariously liable for the acts of an oil field worker who negligently causes an accident while in transit to a remote worksite. The test is simple enough to state: does "an objective analysis" show that "the employee was performing the tasks generally assigned to him in furtherance of the employer's business" or otherwise stated, "the employee must be acting with the employer's authority and for the employer's benefit." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 138–39 (Tex. 2018). Here, the summary judgment record provides some evidence that an employee while being paid for his travel time and driving a company issued truck to a location directed by the employer caused an accident that fatally injured another motorist. The

company issued truck was not just any vehicle, but was a truck specifically needed on the worksite. He was directed to appear at a workplace in the early morning, though to do so, the employer knew the employee would be driving all or most of the night. We conclude that these facts collectively are enough to overcome the "coming and going" rule, at least in the summary judgment context. We also conclude, however, that a negligent entrustment claim fails because the alleged prior bad acts of the employee were either too remote, or not germane to whether the employee was an incompetent driver. As a result, we affirm in part and reverse in part the summary judgment below.

## I. FACTUAL SUMMARY

### A. The Accident

The genesis of this case is a 2018 traffic accident on I-10 in Crockett County, Texas. In the very early morning hours, Ruben Garza was asleep in his parked car on the improved west-bound shoulder of I-10. Adrian Samuel was traveling westbound and is alleged to have fallen asleep, causing his vehicle to drift off the road and strike Garza's parked car from the rear. Garza died in the accident.

Garza's family sued Samuel, alleging various acts of negligence in causing the accident. They also sued RDL Energy Services, LP, RDL Energy Services LLC, (collectively RDL) and JPH Holdings, LLC (JPH) contending that both employed Samuel at the time of the accident. Germane here, they allege that Samuel at the time of the accident was in the course and scope of his employment with RDL and JPH, making both vicariously liable for his conduct. And they also allege that RDL and JPH negligently entrusted the Ford F-350 pickup that Samuel was operating without properly investigating his background. As we detail below, Samuel had a past criminal history that included one prior DWI conviction.

## B. Samuel's Employment

Samuel was employed as a hydro-test technician, which means he tests pipelines to ensure that pipes and valves can hold sufficient pressure to deliver product. RDL employed Samuel for that job, and issued his paycheck and made tax withholdings. RDL, however, acted as a staffing firm in that it would provide technicians, such as Samuel, to other companies that needed hydro-testing services. Once assigned, Samuel would turn in his time weekly to RDL. And RDL would then invoice the company (here JPH), using Samuel's daily rate, along with an extra premium for RDL's services. Workers such as Samuel might be dispatched from their home to a remote worksite. In this case, RDL paid Samuel his regular day rate for transit from his residence to the worksite and reimbursed him for fuel expenses.

At the time of the accident, Samuel was reporting for his second job with JPH. He had finished another JPH job and had returned to his home in Rosenberg, Texas for a few days. JPH's supervisor then called him directly the day before the accident and said "Hey, look, we've got another job that we are going to be doing, and I need you to come to the yard -- meet me in the yard around 6:30, 7:00ish, and we'll go look at the job and prepare the staging and see what all we're going to need to start the job." The 500-mile trip from Rosenberg, which is just west of Houston, to Pecos would take about 7-8 hours. Samuel had made the trip 10 to 15 times before. On this occasion, he left for the job at 11:30 p.m. The accident occurred between 4:30-5:00 a.m. JPH's supervisor knew that Samuel would be driving overnight.

The Ford F-350 truck that Samuel was driving was provided to him by JPH. Samuel was supposed to use the truck for only work related purposes, but going home and back was allowed. Samuel testified below that driving this vehicle was part of his job responsibility, that it was his "work truck," and one of the "tools" needed to perform his job. He explained, "[I]f I needed to go

3

pick up some material from them at some other place or if we had downtime and if I needed to go to the grocery store and get me some items that I needed for personal use, then I was able to use that vehicle." "My responsibility as far as with that -- with that vehicle was to use that vehicle to go and fro to the job sites and to use it to haul any material that was needed for the job for hydro test." Chad Peters, JPH's Corporate Representative, testified that the purpose of providing Samuel a vehicle was for him "to drive to and from work" and from "work location to work location". The job required Samuel to drive an F-350 or similar vehicle.

Our record also shows that JPH has a policy that required Samuel to "take ample breaks to reduce complacency of fatigue" and another policy that prevented driving of JPH Services' assets "between the hours 11:00 p.m. and 5:00 a.m. unless prior approval has been obtained from management." Following the accident, both JPH and RDL sent representatives to the accident scene. JPH reprimanded Samuel for driving after hours.

### C. Procedural Background

Garza's family members settled with Samuel who has been dismissed from the case. Both JPH and RDL filed separate traditional, and no evidence motions for summary judgment, contending that even if they are considered to be Samuel's employer, there is no genuine issue of material fact on whether Samuel was in the course and scope of his employment at the time of the accident. The motions contend that under the "coming and going rule" Samuel was on this way to a job and not working for either company as a matter of law. The motions also challenged the negligent entrustment claim that the Garza family had also asserted. JPH's motion contended that no evidence shows that Samuel was an incompetent driver who could not be entrusted with a vehicle. RDL makes the same claim and adds that it did not entrust the vehicle to Samuel, nor have

4

any control over it. After considering the Garza family's response and the arguments of the parties, the trial court granted both JPH and RDL's motions.

## II. ISSUES ON APPEAL

The Garzas raise three issues on appeal. The first and second issues respectively complain that the trial court granted the traditional and the no-evidence motions for summary judgment under the "coming and going" rule because Samuel was transporting equipment in furtherance of his employers' business at the time of the accident. Their third issue argues that the trial court erred in granting the no-evidence motion for summary judgment on the negligent entrustment claim.

## III. STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment de novo. *Travelers Ins. Company v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Rule 166a(i) permits a party to move for a no-evidence summary judgment "without presenting summary judgment evidence," but it requires the moving party to "state the elements as to which there is no evidence." TEX.R.CIV.P. 166a(i); *Wade Oil & Gas, Inc. v. Telesis Operating Co., Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2013, no pet.). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact for each element challenged in the motion. *Wade Oil & Gas*, 417 S.W.3d at 540. The trial court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact. TEX.R.CIV.P. 166a(i).

A no-evidence motion for summary judgment is essentially a pre-trial directed verdict, and we apply the same legal sufficiency standard of review as we would for a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Under this standard, a no-evidence motion for summary judgment should be granted when: (1) there is an absence of evidence of a

5

vital fact; (2) the court is barred by rules of evidence or law to give weight to the only evidence provided; (3) the evidence offered is no more than a mere scintilla; or (4) the evidence presented conclusively establishes the complete opposite of the vital fact. *Id*. at 751. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Id*. Stated otherwise, there is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540.

JPH and RDL also asserted traditional summary judgment motions under TEX.R.CIV.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). We review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

When, as here, the trial court's order "does not specify the grounds for its ruling, summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious." *Bustamante v. Miranda & Maldonado, P.C.*, 569 S.W.3d 852, 857 (Tex.App.--El Paso 2019, no pet.).

## IV. CONTROLLING LAW

Generally, a person has no duty to control the conduct of another, and consequently is not responsible for the torts of another. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757

(Tex. 2007); *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006). The common-law doctrine of respondeat superior, or vicarious liability, is an exception to this general rule. *Painter*, 561 S.W.3d at 131. Under that doctrine, the "liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them." *Painter*, 561 S.W.3d at 130, *quoting St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002) (plurality opinion). "The doctrine has been explained as 'a deliberate allocation of risk' in line with 'the general common law notion that one who is in a position to exercise some general control over the situation must exercise it or bear the loss.'" *Id.*, *quoting St. Joseph Hosp. v. Wolff*, 94 S.W.3d at 540. "[V]icarious liability is premised on the relationship between the wrongdoer (agent) and the third party (principal) to whom liability is imputed. *Id.* at 132. The employer-employee relationship is one that potentially creates vicarious liability. *See id*. at 131.

To prove vicarious liability based on the employer-employee relationship, the Garzas carry the burden to show that at the time of the negligent conduct, Samuel (1) was an employee, and (2) was acting in the course and scope of his employment. *See Painter*, 561 S.W.3d at 131. Both RDL and JPH's motions for summary judgment assume without conceding that they were Samuel's employer at the time of the accident. So we need not address that first prong of the test.

The second inquiry is whether the employee is in the "course and scope of employment" which means acts done within the scope of the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which the employee was hired. *Id*. Additionally, the employee's act must be of the same general nature as, or incidental to, the authorized conduct. *Id.* And while control is an important attribute of whether a person is an employee, control over the specific activity that causes the injury is not the relevant inquiry for the course and scope determination. *Id*. Nor are we to engage in a task-by-task analysis for course and

7

scope. *Id.* at 138. Otherwise, courts would face an "unworkable paradigm" where individuals could change status countless times in a workday. *Id*. at 133.

Another corollary shapes the course and scope rule. Under the "coming-and-going rule," an employee is generally not in the course and scope of employment while driving to and from work. *See id.* at 136, 139. Instead, an accident while traveling to and from work generally arises from the risks and hazards inherent to the driving public, rather than a person's employment. *Smith v. Texas Employers' Ins. Ass'n*, 105 S.W.2d 192, 193 (Tex. [Comm'n Op.] 1937). But as an exception to the coming-and-going rule, an employee is in the course and scope of employment when travel "involves the performance of regular or specifically assigned duties for the benefit of the employer." *Painter*, 561 S.W.3d at 139 (often termed a "special mission").

A rebuttable presumption arises that a driver is in the scope of his employment if the accident occurred when "the [vehicle] was owned by the defendant and that the driver was in the employment of defendant." *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971). The rationale is that when the vehicle is furnished or paid for by an employer and an employee is driving the vehicle, there is an assumption that the employee was engaged in the employer's business. *Id.* at 358. The presumption, however, "is not evidence but rather a rule of procedure . . . that is overcome when positive evidence to the contrary is introduced." *Green v. Ransor, Inc.*, 175 S.W.3d 513, 516 (Tex.App.--Fort Worth 2005, no pet.); *Mejia-Rosa v. John Moore Servs.*, No. 01-17-00955-CV, 2019 WL 3330972, at *7 (Tex.App.--Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.) ("[the employee's] affidavit and deposition testimony effectively rebutted the presumption by establishing that he was returning home from work and was not acting in furtherance of JMS's business when the accident occurred").

## V. COURSE AND SCOPE

### A. The No Evidence Motions

The Garzas offered some evidence that Samuel was driving a vehicle provided by JPH, and that he was paid his daily wage for the transit. This evidence at least gives rise to the *Robertson Tank Lines* rebuttable presumption that Samuel was in the course and scope of his employment at the time of the accident. *Robertson Tank Lines*, 468 S.W.2d at 357; *EAN Holdings, LLC v. Arce*, 636 S.W.3d 290, 296 (Tex.App.--Fort Worth 2021, pet. denied).

JPH and RDL could rebut the presumption through the evidence they attached in their own motions for summary judgment. But once they offer evidence in support of their motions for summary judgment, the motions are no longer true "no evidence" motions and stand or fall as traditional Rule 166a(c) motions. Thus, the trial court would have erred in granting the no evidence portion of the motion on the course and scope issue. *See Brown v. Big D Transp., Inc.*, 45 S.W.3d 703, 705–06 (Tex.App.--Eastland 2001, no pet.) (reversing no evidence summary judgment where court would have to consider movant's evidence to overcome presumption under "branded vehicle doctrine" raised by non-movant's evidence); *Patton v. Harris County Community Supervision and Corr. Dep't*, No. 14-04-00683-CV, 2005 WL 3116405, at *5 (Tex.App.--Houston [14th Dist.] Nov. 23, 2005, pet. denied) (mem. op.) (noting that a whistleblower terminated within 90 days of making a report enjoys a statutory presumption of causation which can be rebutted at trial— shifting the burden back to the plaintiff—but the defendant cannot do the same in the context of a no-evidence motion for summary judgment).

The Garzas second issue is sustained.

## B. The Traditional Motions

The decision point here therefore turns to whether JPH and RDL can prevail on their traditional motions for summary judgment. And as to those motions, the evidence is essentially uncontested. When viewed in the light most favorable to the Garzas, as we must, the summary judgment record shows that Samuel was traveling to a worksite from his home. He did so, driving at night, at the direction and with the permission of JPH's supervisor. He did so in a vehicle JPH provided that was used as a work-truck at the worksite. He was paid for his time in transit at his ordinary daily rate. His employer reimbursed him gasoline expenses. Both parties direct us to cases addressing the individual significance of each of these facts. They also direct us to the Texas Supreme Court's decision in *Painter*, so we start there.

In *Painter*, which also dealt with a remote drilling site, the employer (Amerimex) provided a bunkhouse to its works that was some 30 miles away. 561 S.W.3d at 128. The contract between Amerimex and the leaseholder provided that Amerimex would bill $50 per day for the driller to drive the crew to the well location. *Id*. While driving the crew from the well site to the bunkhouse, the driller was involved in an accident, resulting in multiple fatalities and injuries. *Id*. The question before the court—in the context of a summary judgment—was whether those facts created a genuine issue of material fact as to whether Amerimex could be vicariously liable for the alleged tortious conduct of the driller in driving his personal vehicle.

There was no dispute that the driller in *Painter* was an employee of Amerimex. The question was whether he was in the course and scope of employment while driving the crew to the bunkhouse after the shift had ended. The Texas Supreme Court confirmed that the coming-and-going rule would apply when assessing any vicarious liability of Amerimex. *Id*. at 139. ("We confirm that the coming-and-going rule, under which an employee is generally

10

not acting within the scope of his employment when traveling to and from work, applies in the vicarious-liability context.").[1] But the court also recognized an exception to that rule the when the "travel involves the performance of regular or specifically assigned duties for the benefit of the employer." *Id.* In defining this "special mission" exception, the *Painter* court discussed two prior cases of note.

In *Pilgrim v. Fortune Drilling Co., Inc.* the Fifth Circuit, applying Texas law, concluded that a driller driving home after a 12-hour shift was not in the course and scope of employment. "[I]n the absence of some special benefit to the employer other than the mere making of the employee's services available to the employer at his place of business the rule in Texas is that an employee is not acting in the course and scope of his employment while traveling to and from work, and that the employer ordinarily cannot be held vicariously liable to one injured by the employee's negligent operation of an automobile during these trips to and from work." 653 F.2d 982, 987 (5th Cir. 1981). As the *Painter* court notes, these determinations are highly fact specific. *Painter*, 561 S.W.3d at 136.

*Painter* also cites our case of *Chevron USA, Inc. v. Lee*, where we found that an employee's mandated attendance at a seminar on his day off amounted to a "special mission," so as to make the employer vicariously liable for the employee's negligence while driving there. 847 S.W.2d 354, 355 (Tex.App.--El Paso 1993, no writ). Our court described a "special mission" as one where the employee "is traveling from his home or returning to it on a special errand either as part of his

---

[1] *Painter* acknowledges that both the "coming-and-going" rule and the "special mission" exception are rooted in Texas Workers Compensation law. *Id*. at 136. We recognize that different principles animate common-law vicarious liability and the Texas Worker's Compensation Act. *See Waste Mgmt. of Texas v. Stevenson*, 622 S.W.3d 273, 281 (Tex. 2021). And of course, in a worker's compensation case, the coming-and-going rule is statutorily defined, and contains an exception to the exception that negates application of the rule if the employer furnishes transportation as part of the contract of employment or the employer pays for the transportation. *See* TEX.LAB.CODE ANN. § 401.011(12)(A)(i). As the Labor Code does not govern here, we ground our decision solely on the common law application of that doctrine.

regular duties or at the specific order or request of his employer." *Id.* at 356. After discussing both *Pilgram* and *Lee*, *Painter* describes a special mission as one when "such travel involves the performance of regular or specifically assigned duties for the benefit of the employer." *Painter*, 561 S.W.3d at 139.

JPH and RDL posit several reasons why the facts here fail to prove course and scope: (1) driving the F-350 between Samuel's home and the worksite was not a duty of a hydro-technician; (2) the fact that Samuel was on his way to work rebuts the *Robertson Tank Lines* presumption from merely driving a company vehicle on the clock; (3) payment of a travel allowance or expenses does not establish course and scope; (4) transporting equipment to work does not establish course and scope. We ultimately reject JPH and RDL's arguments for two reasons. First, the Garzas presented some evidence that Samuel was transporting a specific work tool for his employer at the direction of his employer. Second, the employer's direction to appear at the worksite at a specific time in the early morning when it knew Samuel was across the state and would need to travel overnight is some evidence of a special mission that is an exception to the coming-and-going rule.

The parties do not dispute that JPH secured the F-350 truck that Samuel was driving and understood it to be important to Samuel performing his job. JPH's representative testified:

Q. Did Mr. -- did the job that Mr. Samuel – that he was performing, was that a job that required him to drive an F-350 or a similar vehicle?

A. Yes.

Q. Okay. So JPH didn't need any kind of express written approval from RDL regarding driving an F-350. The job required him to drive a 350 to work?

A. Well, required the work truck, yes.

Q. And he used that truck all the time for work, did he not?

A. To the best of my knowledge. I -- I don't know if it was that specific truck or one similar, but our fleet trucks are three-quarter and one-ton vehicles, yes.

The record is unclear as to exactly when JPH's supervisor directed Samuel to come to the jobsite, but there is some record evidence that Samuel needed to be there at around 6:30 or 7:00 a.m., that the supervisor knew Samuel was 500 miles away, and would need to be driving overnight to get to the jobsite in time. Samuel left at 11:30 p.m., and the accident occurred between 4:30-5:00 a.m. when he allegedly fell asleep. JPH's supervisor knew that Samuel would be driving overnight.

JPH cites several cases for the proposition that merely transporting a work-tool to the job site does not establish course and scope of employment. In *Farrell v. Commercial Structures and Interiors, Inc.*, No. 05-02-00031-CV, 2002 WL 31411022 (Tex.App.--Dallas Oct. 28, 2002, no pet.) (not designated for publication) the court held that an employee traveling in his personal vehicle and carrying a specially fabricated work tool to a remote worksite, was held as not in the course and scope of employment. The case notes, as many older cases do, the lack of control by the employer over the trip or the route taken by the employee. *Id.* at *2. The court states, in fact, that an employee cannot be on a special mission if the employer "neither requires a particular means of travel nor directs the employee to take a particular route." *Id*. This Court relied on similar authority when we held that the driller in *Painter* was not in the course and scope of his employment when he transported the crew to the bunk house. *See Painter v. Amerimex Drilling I, Ltd.*, 511 S.W.3d 700, 709-712 (Tex.App.--El Paso 2015), *rev'd*, 561 S.W.3d 125 (Tex. 2018). We cited and attempted to reconcile the several cases that similarly looked to whether an employer dictated the route driven or otherwise controlled the actions of the employee at the very instance of the alleged tort. *Id*. The Texas Supreme Court, however, rejected that line of cases. *Painter*, 561 S.W.3d at 136 n.14 ("Some courts of appeals summarily conclude that when the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's

13

business. We fail to see how a prescribed route is related to the furtherance of the employer's business.") (internal quotation marks and citations omitted).

*Ferrell*, in turn, relies on two earlier cases: *Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201 (Tex.App.--Houston [14th Dist.] 2000, no pet.) and *Direkly v. ARA Devcon, Inc.*, 866 S.W.2d 652 (Tex.App.--Houston [1st Dist.] 1993, writ dis'd w.o.j.). In *Soto*, a jury found an employee who was involved in an accident while returning a set of keys to the workplace was not in the course and scope of employment. The question before the court was whether the evidence established course and scope as a matter of law (and not whether some evidence existed to create a fact question). The employee in *Soto* waived any claim of special mission. But even if he had not, the court rejected any special mission claim because the employer did not require the specific means of transportation or direct the route—a legal principle expressly disapproved of in *Painter*. *Cf. id*. at 206, *with Painter*, 561 S.W.3d at 136 n.14. In *Direkly*, the employee was on her way home to pick up a brief case with work papers that she intended to work on later that evening. 866 S.W.2d at 653. The court concluded the evidence did not establish course and scope, noting the supervisor "did not have the right to control [the employee] while commuting to and from work." *Id*. at 655. Control, however, was divorced from the course and scope inquiry in *Painter*. 561 S.W.3d at 132 ("Accordingly, we disagree with those courts of appeals that have tied the right-to-control analysis to the course-and-scope element of a vicarious-liability claim."). Because the reasoning in *Ferrell*, *Soto*, and *Direkly* is underpinned by principles expressly rejected in *Painter*, we decline to follow these cases.[2]

---

[2] We are also directed to *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216 (Tex.App.--Houston [1st Dist.] August 12, 2021, pet. denied). In that case, a city worker was returning from lunch driving a sewer jet truck. Applying the coming-and-going rule, the court found no evidence placing the worker in the course and scope of employment. The court did not specifically address the role of the work truck. Instead, the plaintiff's argument focused on whether the employee's testimony was conclusory or should be discounted as coming from an interested witness. But even if the role of work truck were the issue, the plaintiff there would still be constrained by the rule that an

But *Direkly* does make an argument worthy of consideration. The court rejected the notion that an employee's stated intent to perform some work at home would not alone put the employee's trip home in the course and scope of employment. "To hold otherwise would mean that anyone who brings home her briefcase to do some work is within the course and scope of employment. This is not the law." 866 S.W.2d at 654. JPH and RDL similarly argue that the mere fact an employee has a tool, work papers, or electronic device used for work in their vehicle cannot transform every trip to and from the office into a work related event. While we generally agree with that sentiment, it does not apply here. The tool here—an F-350 pick-up truck—was not merely along for the ride to work, but was the instrumentality directly involved in the accident. And the employer's direction to appear at the worksite in the early morning hours—with the knowledge that Samuel would be driving the F-350 overnight—was at least causally related to the accident. Samuel is alleged to have fallen asleep and drifted off the roadway while driving the F-350 that then struck and Garza's vehicle, causing his death. Here, there is a nexus between the work tool and the specific direction of the employer to drive overnight and the accident. It would be hard to envision how merely having a briefcase in a vehicle would similarly create such a nexus.

We address two other arguments urged by JPH and RDL. They contend that Samuel's job duties are defined by what a hydro-tester does. And driving the F-350 from his home to the worksite is not within the job duties of a hydro-tester. *Painter* of course rejected a task-by-task analysis. *Painter*, 561 S.W.3d at 138 ("Relatedly, as a general matter, we do not evaluate employee status on a task-by-task basis."). Rather, the course-and-scope question "involves an objective

---

employee who engages in a personal errand is not in the course and scope of employment. *See J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637 (Tex.App.--San Antonio 1993, no writ) (employee driving work truck while on call not in the course and scope of employment when collision occurred as employee was returning from personal errand). Here, if Samuel had diverted from the route to the worksite to visit a relative, for instance, the diversion would raise a different question.

analysis, hinging on whether the employee was performing the tasks generally assigned to him in furtherance of the employer's business. That is, the employee must be acting with the employer's authority and for the employer's benefit." *Id*. at 138-39. Because the employer specifically directed Samuel to appear the next morning half-way across the state, with the F-350 work truck, the Garzas raise sufficient facts to survive summary judgment.

Relatedly, JPH and RDL contend that merely requiring an employee to show up for work at a designated time and place does transform the worker's commute into the course and scope of employment. Ordinarily we would agree. Workers are routinely given a start time and expected to conduct their personal affairs to allow for time to commute to the workplace. The difference here is that an inference can be raised that the instruction to Samuel was out of the ordinary. He was directed to make a 7-8 hour commute that would have him drive overnight. There were no co-workers with him to share the driving duties. JPH's internal work rules recognized the risks of late-night driving by restricting driving between 11:00 p.m. and 5:00 a.m. "unless prior approval has been obtained from management."

For the reasons stated, the Garzas have presented sufficient evidence to create a genuine issue of material fact on whether Samuel was in the course and scope of his employment with JPH and RDL at the time of the accident. Issue One is sustained.

## VI. NEGLIGENT ENTRUSTMENT

The Garzas also asserted a negligent entrustment claim, contending that neither JPH nor RDL should have entrusted the F-350 vehicle to Samuel. For this claim, the Garzas carry the burden to prove that: (1) the owner entrusted the automobile; (2) to an unlicensed, incompetent, or reckless driver; (3) whom the owner knew or should have known was unlicensed; (4) the driver

16

was negligent; and (5) the driver's negligence proximately caused the accident and the plaintiff's injuries. *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987).

JPH and RDL both challenge the second element, contending that the Garzas have no evidence that would have shown Samuel to be an unlicensed, incompetent, or reckless driver.[3] The record shows that Samuel held a valid Texas Commercial Driver License at the time of the accident. Possession of a valid, unrestricted driver license is evidence of a driver's competency absent evidence to the contrary. *Freyer v. Lyft, Inc.*, 639 S.W.3d 772, 785 (Tex.App.--Dallas 2021, no pet.) *citing Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex.App.--Dallas 2004, pet. denied); *Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 48 (Tex.App.--San Antonio 2001, no pet.). Our focus then is whether the evidence shows that he was incompetent or reckless.

The Garzas summary judgment response documented Samuel's criminal past. He served a term in a federal penitentiary from 2001 to 2013 for possession/distribution of a controlled substance. Before that, he had a drug conviction in 1990 that resulted in a short state prison term. Even earlier, he was charged with theft, burglary of building, and forgery, which were pleaded down to criminal trespass. And as early as 1984, he was charged with possession of drug paraphernalia. Notable as this criminal history might be, it does not support an inference as to Samuel's ability to drive a vehicle. The Garzas' burden was to show that Samuel was an incompetent or reckless driver, and not that he lacked a pristine past. *See Wright v. Weaver*, 516 F.App'x 306, 310 (5th Cir. 2013) (unpublished) (arrest for possession of marijuana and prescription medication without a prescription would not sustain negligent entrustment claim where drug use was not involved in accident); *McDorman ex rel. Connelly v. Texas-Cola Leasing Co. LP, LLP*, 288 F.Supp.2d 796, 805 (N.D. Tex. 2003) (prior conviction for marijuana possession

---

[3] RDL also asserts it never entrusted a vehicle to Samuel. Given our disposition of the first argument, we need not reach that secondary issue.

with intent to sell and domestic violence convictions "would not have placed Coca Cola on notice that Mr. Upshaw was unfit to drive a company vehicle").

Focusing only on driving offenses, Samuel was convicted of driving while intoxicated in 1995. The next year, he was cited for driving with an invalid license. And further back in his past—in 1979—his license was suspended for driving without liability insurance. These offenses arose 22 years or more before the accident here. They are all too remote in time to support a fair inference that Samuel was an incompetent or reckless driver more than two decades later. *See Batte*, 137 S.W.3d at 791 ("However, a sixteen-year-old guilty plea to driving while intoxicated is too remote to create a fact issue on incompetence or recklessness."); *Avalos*, 63 S.W.3d at 49 (seven-year-old driving while intoxicated conviction too remote to create fact issue on driver's incompetence or recklessness). So even if these particular infractions relate to driving incompetence or recklessness, they are simply too remote in time to be relevant here.

The Garzas' third issue is overruled.

## VII. CONCLUSION

We conclude that JPH and RDL failed to carry their burden to show that Samuel was not in the course and scope of his employment at the time of the accident. Stated otherwise, the Garza plaintiffs have raised at least a genuine issue of material fact on that issue under the summary judgment standard. We reverse that portion of the summary judgment below. We affirm, however, the motions for summary judgment as to the negligent entrustment claim for both JPH and RDL.

JEFF ALLEY, Justice

December 20, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

18